```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ALICE M. RAMIREZ, | |
| Plaintiff, | |
| v. | HONORABLE JEROME B. SIMANDLE |
| CITY OF CAMDEN, NEW JERSEY, CHIEF OF POLICE J. SCOTT THOMSON, POLICE OFFICER M.M. MATHEWS, POLICE OFFICER JAMES MELTON, CAMDEN POLICE OFFICERS JOHN DOE 1-6 | Civil No. 13-1502 (JBS/AMD) |
| | **OPINION** |
| Defendants. | |

APPEARANCES:

Herbert McDuffy, Jr., Esq.
200 Campbell Drive, Suite 103E
Willingboro, NJ 08046
    Attorney for Plaintiff

Brian E. Turner, Esq.
Timothy J. Galanaugh, Esq.
CITY OF CAMDEN ATTORNEY'S OFFICE
520 Market Street, Room 420
Camden, NJ 08101
    Attorneys for Defendants City of Camden and Chief of Police J.
    Scott Thomson

Timothy J. Galanaugh, Esq.
CITY OF CAMDEN ATTORNEY'S OFFICE
520 Market Street, Room 420
Camden, NJ 08101
    Attorney for Defendants Police Officer M.M. Mathews and Police
    Officer James Melton

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

   This is a case involving Camden police officers who entered the

home of Plaintiff Alice Ramirez over her objections in order to make a warrantless arrest of her son, Raymond, whom they claim they had pursued to Plaintiff's house. Defendants the City of Camden, the Chief of Police, and police officers M.M. Mathews and James Melton seek summary judgment on this 42 U.S.C. § 1983 case, arguing that the warrantless entry did not violate the Fourth Amendment because it was made in the course of a "hot pursuit." Because there is a genuine dispute of material fact on the present record whether Raymond was being pursued by the police before the officers entered, summary judgment will be denied as to the officers. Also, because neither party addresses the issues of the municipal liability of the City of Camden and of Chief of Police J. Scott Thomson, their motion for summary judgment must be dismissed without prejudice to renewal in a properly-briefed motion.

**II.   BACKGROUND**

On March 12, 2012, Plaintiff Alice Ramirez was at home in Pennsauken, New Jersey with a large group of friends and family members preparing dinner when two police officers from the Camden Police Department knocked on her door. The two officers, Defendants M.M. Mathews and James Melton, were looking for her son, Raymond Ramirez ("Raymond"), in connection with a complaint lodged by his girlfriend, Alyssa Maldonado, earlier that day. Raymond lived with his mother and was at home when the officers arrived. (Def. Statement of Material

Facts ("SMF") [Docket Item 19] ¶¶ 6, 16; Pl. Counterstatement of Material Facts ("Counter SMF") [Docket Item 21-1] ¶¶ 4.) According to a police report, Maldonado had stated to the police that Ramirez had gone to her residence "attempting to damage her vehicle." (Police Incident Report, Def. Ex. D [Docket Item 19-4].) The officers were looking for Ramirez and two other individuals, Dwayne Caldwell and Keon Skinner, who had threatened Maldonado's friend, Beatrize Campos.[1]

Alice Ramirez opened the door and asked the officers for a warrant. When they could not produce one, she refused to let them into her house. The officers nevertheless forced their way in to look for Raymond. (Alice Ramirez Dep. [Docket Item 19-3] 24:14-18; 49:1-9; SMF ¶¶ 9-12; Counter SMF ¶¶ 6-7.) Approximately 15 people, including six children, were present, and at some point Defendants called for backup. The officers caused an uproar in Plaintiff's home and broke several chairs and a glass table in the living room. During the chaos, Plaintiff's mother fainted and Defendants initially refused to call for help despite pleas from family members. (Alice Ramirez Dep. 13:10-17; Vargas Dep. 12:1-8; Counter SMF ¶ 8.) The officers eventually found Raymond inside the house and arrested him on a charge

---

[1] Campos stated to the police that Dwayne Caldwell had violated his restraining order by calling Campos and "circling her residence," and that Keon Skinner, had "threatened to cut her in the stomach and cause to her baby.[sic]" (Police Incident Report.) Nothing in the record suggests that Raymond was involved in these incidents.

of harassment under N.J.S.A. 2C:33-4. (Police Arrest Report, Def. Ex. D.)[2]

Defendants contend that the facts show the officers entering Plaintiff's home while pursuing Raymond Rodriguez. According to Defendant Mathews' Police Incident Report, Maldonado and Campos told the officers that Raymond, Skinner, and Caldwell were standing on a nearby street corner. (Police Incident Report [Docket Item 19-4], Ex. D to Def. Br.) Then, "[u]pon [the officers'] arrival," the men "fled into" Plaintiff's house. (Id.) Mathews and Melton "followed the suspects at which time was greeted by an abundant amount of people screaming and surrounding myself and Officer Melton." (Police Incident Report.) Defendants' Police Arrest Report, however, which was filled out approximately twenty minutes before the Incident Report, did not provide this detail. The description of the incident stated only that

> THIS UNIT WAS DISPATCHED TO 4001 MYRTLE (APT# H-2), IN REFERENCE TO DOMESTIC DISPUTE. THIS UNIT ALONG WITH OFC. MATHEWS (UNIT#234) AND THE TWO FEMALE COMPLAINANTS, WHEN[SIC] TO 4625 WOODLAND, PENNSAUKEN. UPON ARRIVAL THIS UNIT ALONG WITH SEVERAL OFFICERS PLACE[D] MR. RODRIGUEZ [] UNDER ARREST AND AND TRANSPORTED HIM TO PAB AND CHARGED ACCORDINGLY.

(Police Arrest Report, Ex. D to Def. Br.)

In contrast to the version of events described in the Police Incident Report, Plaintiff repeatedly testified that her son was at

---

[2] Plaintiff was also charged with obstructing the administration of law but the charges were later dismissed. (Counter SMF ¶ 9.)

4

home the entire day and was inside the house for at least two hours before the officers came to her door. (Alice Ramirez Dep. 20:7-9; 52:5-22; 53:16-18.) When asked whether she knew whether Raymond, Skinner, and Caldwell might have been standing on the street corner named in in the police report, she stated, "I have no idea about that." (Id. 33:17-25.)

Plaintiff's sister, Marisol Babilonia, was also at Plaintiff's home that evening and testified that in the one and a half to two hours she was there before the police arrived, she did not see Raymond leave the house. (Babilonia Dep. [Docket Item 19-5] 16:4-16; 25:14-26:3.)

Babilonia's daughter, Mariah Vargas, arrived at Plaintiff's house around the same time as her mother and likewise testified that Raymond had been playing a video game upstairs and "was just hanging out with the rest of us." She never saw Raymond leave the house. (Vargas Dep. 12:18-13:3.) When asked if there ever was a time "where [she] didn't see him at all," Vargas responded, "No, I don't think so." (Id. 13:4-6.)

Plaintiff Alice Rodriguez filed an amended complaint in July 2014, arguing that the warrantless entry into her home was unconstitutional. In addition to the City of Camden and Chief Thomson, the amended complaint names Officers M.M. Mathews and James Melton, in addition to "Camden Police Officers John Doe 1-6." Plaintiff

5

asserts claims against all Defendants under § 1983 for unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments (Count One). She also asserts § 1983 claims against Defendants Thomson and City of Camden for failure to intervene (Counts Three). She asserts common law claims of assault, false arrest, and intentional infliction of emotional distress against Defendants Mathews and Melton (Count Two). Count Four asserts that the City of Camden and Chief Thomson have adopted a policy, custom or practice of failing to properly train, supervise and discipline members of the Camden Police Department regarding the constitutional constraints of wrongful search and seizure, with deliberate indifference to the right to be free from warrantless entry into one's home, in violation of the Fourth Amendment. Defendants moved for summary judgment, arguing that the officers followed Raymond Ramirez to the house after seeing him flee the scene and their actions thus fell within the "hot pursuit" exception to the Fourth Amendment. Plaintiff disputes Defendants' version of events, arguing that Raymond was at home all day.

**III. STANDARD OF REVIEW**

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323

6

(1986). The burden then shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

In reviewing a summary judgment motion, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Summary judgment will be denied if there is "some evidence" on which a reasonable jury could return a verdict in favor of the non-moving party. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

**IV. DISCUSSION**

 **A. Fourth Amendment Claim Against Officers Mathews and Melton**

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Searches and seizures inside a home without a warrant are "'presumptively unreasonable'" under the Fourth Amendment. Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004)). A warrantless entry into a home may, however, be appropriate in certain limited exceptions, where the Court has found that exigent circumstances justified the

intrusion. See Payton v. New York, 445 U.S. 573, 590 (1980) (noting that the threshold of a home may not be crossed "[a]bsent exigent circumstances").  One well-recognized exception, and the one at issue in this case, applies when police officers enter a premise in hot pursuit of a fleeing suspect. See Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013); Kentucky v. King, 131 S. Ct. 1849, 1857 (2011). In United States v. Santana, 427 U.S. 38 (1976), the Supreme Court held that when officers attempt to make a warrantless arrest in a public place but the suspect flees into a dwelling, the officers do not need a warrant to pursue the suspect and carry out the arrest. Id. at 42-43; see also Bodine v. Warwick, 72 F.3d 393, 399 (3d Cir. 1995) ("[W]hen the police attempt to make an arrest with a warrant in a public place and the suspect flees into his or her home and closes the door, it is reasonable for the police to pursue the suspect inside without stopping and announcing their presence and intentions at the threshold.") In such situations, the warrantless entry is reasonable because "there is compelling need for official action and no time to secure a warrant." Michigan v. Tyler, 436 U.S. 499, 509 (1978); see also United States v. Mallory, 765 F.3d 373, 384 (3d Cir. 2014). The government, however, bears the burden of demonstrating that exigent circumstances justified the warrantless search, and the burden is "heavy." Mallory, 765 F.3d at 383-84 (quoting Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984)).

In this case, the parties agree that the police officers entered Plaintiff's house without consent to make a warrantless arrest. Defendants argue, however, that Raymond Ramirez had been fleeing from Defendant officers immediately before they showed up at Plaintiff's doorstep and that the pursuit of a suspect justified the warrantless entry. While Defendants characterize the facts as showing a "hot pursuit," a close examination of the record reveals that the only document supporting this view is the Police Incident Report. The report states that Mathews and Melton spotted Raymond, Skinner, and Caldwell on a street corner and that the men "fled" upon the officers' arrival and went to Plaintiff's house.

By contrast, the Police Arrest Report, which was filled out twenty minutes earlier, makes no reference to a chase and merely states that after speaking with the two complainants, Officer Mathews and the complainants went to Plaintiff's residence and placed Raymond under arrest. There is no mention in the Arrest Report that Raymond was first spotted at a street corner, nor is there any mention that he fled the scene. Evidence that there was a pursuit is also contradicted by Plaintiff, Babilonia, and Vargas, who testified that Raymond had been in the house for at least one and a half or two hours before Defendants knocked on the door. Vargas's testimony is particularly notable, since she stated that she was with Raymond for much of the time at Plaintiff's house and did not see him leave.

Taking the evidence in light most favorable to Plaintiff, a reasonable jury could find that police officers did not pursue Raymond Rodriguez from a street corner to Plaintiff's door, but instead went to Plaintiff's house to seek him out in response to Maldonado's complaint. As such, the arresting officers' conduct could be found unlawful under the Fourth Amendment because it fell outside the hot pursuit exception. See Welsh v. Wisconsin, 466 U.S. 740, 753 (1984) (rejecting government's claim of hot pursuit because "there was no immediate or continuous pursuit of the petitioner from the scene of a crime."); Santana, 427 U.S. at 42 and n.3 (noting that "'hot pursuit' means some sort of chase"); Hazleton v. Trinidad, 488 Fed. App'x 349, 352 (11th Cir. 2012) (finding no hot pursuit where officers paused in their pursuit and "directed their attention elsewhere for several minutes" after plaintiff ran into her home); United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005) (explaining that government must demonstrate an "immediate or continuous pursuit" of the suspect from the scene of the crime in order to fall within the hot pursuit exception to the warrant requirement); United States v. Dawkins, 17 F.3d 399, 407 (D.C. Cir. 1994) (finding no hot pursuit where police officers "were not chasing [the suspect] in a literal sense" and the evidence in the record pointed to the contrary). Because questions of fact remain as to whether Defendants entered Plaintiff's home in the course of a pursuit, and Defendants do not argue that any other exigent

circumstance existed to justify the warrantless entry, summary judgment will be denied.

The Court also finds that Defendants Mathews and Melton are not entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." Butz v. Economou, 438 U.S. 478, 506-07 (1978). In each case, the government's interests must be balanced against the citizens' interest in vindicating their constitutional rights, as well as the public interest in holding officials accountable "when they exercise power irresponsibly." Pearson, 555 U.S. at 231. The qualified immunity claim is traditionally addressed in two steps. The court must decide whether the facts alleged, taken light most favorable to the plaintiff, makes out the violation of a constitutional right. See Saucier v. Katz, 533 U.S. 194, 121 (2001); Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 86 (3d Cir. 1998). The court must also examine whether the right at issue was "clearly established" at the time of the violation. Although the two-step sequence is no longer

mandatory, see Pearson, 555 U.S. at 241-42, the Court will address both prongs.

With respect to the first step, the Court finds that the facts of record, when viewed in the light most favorable to Plaintiff, supports that Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure. As already noted above, there is sufficient evidence in the testimony of Plaintiff, Babilonia, and Vargas from which a reasonable jury could find that Defendants' forcible entry was not based upon a hot pursuit. The second step of the traditional Saucier analysis asks whether the law was clearly established when the officials acted such that reasonable officials could fairly have known that that their alleged conduct was illegal. Larsen, 154 F.3d at 87. Defendants have pointed to no cases – and the Court finds none – to suggest that the law in 2012 was unsettled as to whether the Fourth Amendment allowed for warrantless entry into a home in the absence of exigent circumstances.

On the contrary, it was clearly established at the time that warrantless searches and seizures inside a home are "presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion." United States v. Coles, 437 F.3d 361, 365-66 (3d Cir. 2006) (emphasis in original). It was also clearly established that in the absence of evidence establishing hot pursuit, a warrantless entry was generally justified

only to prevent imminent destruction of evidence, to prevent a suspect's escape, or to neutralize a risk of danger to the police or to other persons inside or outside the home. See Minnesota v. Olson, 495 U.S. 91, 100 (1990); Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006); Davis v. Township of Paulsboro, 421 F. Supp.2d 835, 850-51 (D.N.J. 2006) (same); see also Mallory, 765 F.3d at 384. No other exigencies were present in this case to justify Defendants' conduct. Nothing in the evidence suggests that there was a risk that evidence would be destroyed; nor does the evidence indicate that Ramirez had a weapon or that he presented a threat to the safety of police officers or persons inside the home. Although the officers were responding to a domestic violence complaint, the complaint related to a past act and the danger had already dissipated. Indeed, according to the Police Arrest Report, the complainants were outside with the police when the officers chose to forcibly enter Plaintiff's home and were therefore at no risk of harm. Compare United States v. Goree, 365 F.3d 1086, 1090-91 (D.C. Cir. 2004) (noting that 911 call about a domestic assault "in progress" justified warrantless entry).

Defendants' argument, that the officers were required to act because "[t]he crime being investigated was [the] threat of domestic violence in the form of cutting the stomach of a pregnant woman," is contradicted by the record. The Police Incident Report states that the threat of bodily harm was made by Keon Skinner against Beatrize

13

Campos, and the only complaint against Raymond was that he went to Maldonado's residence "attempting to damage her vehicle." (See Police Incident Report, Def. Ex. D.) Raymond was charged only with harassment under N.J.S.A. 2C:33-4, a petty disorderly persons offense subject to punishment not to exceed thirty days imprisonment. See N.J.S.A. 2C:43-8; State v. Avena, 657 A.2d 883, 898 (N.J. Super. Ct. App. Div. 1995).

The fact that the offense at issue was relatively minor further supports the denial of qualified immunity. In Welsh v. Wisconsin, 466 U.S. 740 (1984), the Supreme Court noted "that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." Id. at 753. The court held that "[w]hen the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut," and the government should normally be allowed to make warrantless arrests in the home "only with a warrant issued upon probable cause by a neutral and detached magistrate." Id. (finding no exigent circumstance to justify warrantless entry into a home for a traffic offense). Any reasonable official would therefore have known that invading a home in order to carry out an arrest for a petty offense involving damage to a vehicle, in the absence of any exigent circumstance, was unlawful.

Under the circumstances claimed by Plaintiff, i.e., that her

son had been continuously in the home with her, no reasonable police officer could have believed that this was a case of hot pursuit excusing the requirement of a warrant. The Court holds that Defendants Mathews and Melton are not entitled to qualified immunity.

### B. Section 1983 Claims Against Defendants Chief Thomson and City of Camden

Plaintiff has alleged in the Amended Complaint that Defendants City of Camden and Chief of Police J. Scott Thomson violated her right by adopting and ratifying a policy, custom or practice of indifference to the Fourth Amendment right to be free from unwarranted entry and search of one's home (Count Four). [Amended Compl. ¶¶ 37-40.] Plaintiff also has alleged in Count One that the City of Camden has been deliberately indifferent to the unlawful practices regarding the use of excessive force and unlawful physical seizure of persons, and the use of force and entry without a warrant into a person's home. [Amended Compl. ¶ 26a & b.]

Defendants have not briefed the law applicable to these allegations, nor are they mentioned in Plaintiff's Opposition Brief. This motion on behalf of Defendants Chief Thomson and the City of Camden cannot be decided where the moving papers omit any factual or legal arguments directed at these pattern-and-practice and failure-to-train claims under Monell and its progeny.[3]

If Plaintiff does not intend to pursue such Monell claims, which

---

[3] See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

will necessarily involve discovery and proof of training regimens, patterns of similar constitutional violations, and internal disciplinary practices of the Camden Police Department, then Plaintiff should voluntarily dismiss the municipal defendants. Otherwise, the City of Camden and Chief Thomson may renew their summary judgment motion with proper briefing and evidentiary support.

The present motion for summary judgment by Chief Thomson and the City of Camden will therefore be dismissed without prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' motion for summary judgment. The accompanying Order will be entered.

**March 26, 2015**              **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                       Chief U.S. District Judge