```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ALICE M. RAMIREZ,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF CAMDEN, NEW JERSEY,<br>CHIEF OF POLICE J. SCOTT<br>THOMSON, POLICE OFFICER M. M.<br>MATHEWS, POLICE OFFICER JAMES<br>MELTON, CAMDEN POLICE OFFICERS<br>JOHN DOE 1-6,<br><br>          Defendants, | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action No.<br>13-1502 (JBS/KMW)<br><br><br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

   In this case, Defendants City of Camden, Chief of Police J. Scott Thomson, Police Officer M.M. Mathews, Police Officer James Melton, and Camden Police Officers John Doe 1-6 (hereinafter, "Defendants"), move for reconsideration of the Court's Order, entered March 26, 2015 [Docket Item 24], denying Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion will be denied. The Court finds as follows:

   1.  Plaintiff Alice Ramirez filed the initial Complaint in this action on March 12, 2013, alleging that Defendants Mathews and Melton violated her Fourth and Fourteenth Amendment rights when they made a warrantless entry into Plaintiff's home in an attempt to arrest her son, Raymond. [Docket Item 1.] Defendants subsequently filed a motion for summary judgment on all counts,

1

arguing that the warrantless entry did not violate the Fourth Amendment because it was made in the course of a "hot pursuit."[1] Specifically, Defendants argued (1) the testimony of Officer Melton and Officer Mathews combined with the police report showed that the officers were in "hot pursuit" of Plaintiff's son, Raymond Ramirez; and (2) the officers were protected by qualified immunity. (Defs. Mot. for Summ. J. [Docket Item 19] at 9-10, 12.) This Court denied summary judgment, concluding that there was a genuine dispute of material fact on the present record whether Raymond was being pursued by the police before the officers entered, and that Defendants were not entitled to qualified immunity. See (Op. Denying Summ. J. ("Op.") [Docket Item 23] at 10-11.)

2.   Defendants now move for reconsideration of the denial of summary judgment. They contend that the Court incorrectly applied the standard under the Fourth Amendment when denying Defendants' motion. (Defs. Mot. for Recons. ("Defs. Br.") [Docket Item 27] at 2-3.) They also assert that the evidence

---

[1] As will be discussed below, one well-recognized exception to the Fourth Amendment's warrant requirement applies when police officers enter a premise in "hot pursuit" of a fleeing suspect. See Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013); Kentucky v. King, 131 S. Ct. 1849, 1857 (2011). When officers attempt to make a warrantless arrest in a public place but the suspect flees into a dwelling, the officers do not need a warrant to pursue the suspect and carry out the arrest. United States v. Santana, 427 U.S. 38, 42-43 (1976).

when viewed as a whole did not contain any genuine dispute of fact over whether the officers entered Plaintiff's house in "hot pursuit." Id. Plaintiff, in turn, submits that Defendants' motion lacks merit because they "merely disagree with the Court's ruling." (Pl. Opp'n [Docket Item 30] at 2.)

3.    Local Civil Rule 7.1(i) provides that a party moving for reconsideration must set forth "concisely the matter or controlling decisions which the party believes" the Court "overlooked" in its prior decision. L. Civ. R. 7.1(i). "As such, a party seeking reconsideration must satisfy a high burden, and must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

4.    A motion for reconsideration, however, constitutes an extremely limited procedural vehicle, and does "not provide the parties with an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor "may [it] be used to relitigate old matters, [or] to raise arguments or present evidence that could have been raised prior to the entry of judgment." Charles A. Wright, Arthur R. Miller &

Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2810.1. Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999), and should be dealt with through the normal appellate process. S.C. ex rel. C.C. v. Deptford Twp Bd. of Educ., 248 F. Supp. 2d 368, 381 (D.N.J. 2003). Therefore, in order for reconsideration to be warranted, the party seeking reconsideration must specifically rely upon one of the qualifying bases, see L. Civ. R. 7.1(i), and not merely a recapitulation of prior cases and arguments, nor an expression of disagreement with the Court's earlier decision. See Arista Records, Inc. v. Flea World, 356 F. Supp. 2d 411, 416 (D.N.J. 2005).

    5.    Although Defendants' brief is less than clear, Defendants do not appear to argue that there was "an intervening change in controlling law" or the presence of new, previously unavailable, evidence. Instead, Defendants contend that reconsideration is warranted in order to correct a clear error of law, because the Court did not analyze whether the officers' actions were objectively reasonable under the Fourth Amendment. (See Defs. Br. at 2). Likewise, Defendants contend that the Court failed to use the "reasonable objective police officer"

standard in its discussion of qualified immunity. (Id.) The Court finds no merit with either argument.

6.   The Court applied the correct Fourth Amendment standard in reviewing Defendants' summary judgment motion, and Defendants have not demonstrated that reconsideration is warranted based on a clear error of law. Defendants cite no cases in support of their argument that "[t]he standard to be applied . . . is what an objective police officer would do under these circumstances." (Id.) However, the Court recites the well-established Fourth Amendment standard here for the sake of completeness.

7.   It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). Thus, warrants are generally required to search a person's home "unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 393-94 (1978). An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

5

8. The Court stated the correct Fourth Amendment standard in its opinion. Citing to <u>Brigham</u>, it stated that warrantless searches and seizures were presumptively unreasonable, but that warrantless entries were reasonable under certain circumstances, such as when officers are in hot pursuit of a fleeing suspect, where "there is compelling need for official action and no time to secure a warrant." (Op. at 8-9) (quoting <u>Michigan v. Tyler</u>, 436 U.S. 499, 509 (1978)).

9. The Court was also correct in analyzing Plaintiff's claim under the legal standard applicable on a motion for summary judgment. Defendants argued that the evidence on the record showed that Officers Melton and Mathew entered Plaintiff's home in pursuit of Raymond Ramirez and thus their warrantless entry was objectively reasonable. The Court disagreed, noting that at summary judgment, the evidence must be viewed in light most favorable to the plaintiff, and that summary judgment must be denied if, on the evidence presented, there is a material factual dispute and a reasonable jury could find in the plaintiff's favor. After examining the evidence, including the deposition testimony of Plaintiff and two other witnesses, which contradicted the officers' accounts, the Court held that a reasonable jury could find that Officers Melton and Mathews did not pursue Raymond to Plaintiff's home when they entered. (Op. at 10.) The Court took particular note of the fact

6

that Plaintiff and two other witnesses inside the house, Marisol Babilonia and Maria Vargas, all testified, in sum and substance, that Raymond had been inside the house all afternoon and none of them saw him leave. (Id. at 5-6.) Thus, if those statements are believed, a reasonable fact finder could conclude there was no "hot pursuit" at all.

10.  Citing a string of cases, the Court correctly explained that while officers may enter a home while pursuing a suspect without stopping to announce their intentions, a warrantless entry not preceded by an immediate or continuous pursuit falls outside the "hot pursuit" exception and is not objectively reasonable under the Fourth Amendment. (See Op. at 10-11) (citing Welsh v. Wisconsin, 466 U.S. 740, 753 (1984); United States v. Santana, 427 U.S. 38, 42, n.3 (1976); Hazleton v. Trinidad, 488 Fed. App'x 349, 352 (11th Cir. 2012); United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005); United States v. Dawkins, 17 F.3d 399, 407 (D.C. Cir. 1994). Thus, contrary to Defendants' contention, the Court specifically concluded that a rational jury could find on the evidence that Defendants Melton and Mathews violated Plaintiff's Fourth Amendment rights because under the case law, if they were in the act of hot pursuit of Raymond, their actions were not objectively reasonable. Defendants take no issue with any of the

7

cases cited by the Court, and the Court finds no error of law in the Fourth Amendment analysis that would require reversal.

   11.   Defendants' second argument, that the Court did not apply the "reasonable objective police officer standard" in its discussion of qualified immunity, is also incorrect. (See Defs. Br. at 2.)) The Court correctly stated that qualified immunity protects government officials from liability as long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Op. at 12) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010)). The Court also correctly recited the two-prong qualified immunity test: whether a constitutional violation occurred, and whether "reasonable officials could fairly have known that their alleged conduct was illegal." (Op. at 12) (citing Saucier v. Katz, 533 U.S. 194, 121 (2001) and Larsen v. Senate of the Commonwealth of Pa, 154 F.3d 82, 86 (3d Cir. 1998)).

   12.   Whether reasonable officials could have known that their conduct was illegal requires a court to examine case law prior to the time Defendants acted to determine whether it was "clearly established" at the time that Defendants' actions were illegal. (See Op. at 13); Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012). The Court thus specifically examined and cited to

8

case law from the Third Circuit and this district before concluding that it was clearly established at the time of the incident that a warrantless home entry was unlawful unless exigent circumstances such as hot pursuit were present, and that "[a]ny reasonable official would []have known [that] invading a home in order to carry out an arrest for a petty offense . . . in the absence of any exigent circumstance, was unlawful." (Op. at 14-16) (citing Minnesota v. Olson, 495 U.S. 91, 100 (1990); United States v. Coles, 437 F.3d 361, 365-66 (3d Cir. 2006); Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006); Davis v. Twp. of Paulsboro, 421 F. Supp. 2d 835, 850-51 (D.N.J. 2006)). Viewing the evidence in light most favorable to Plaintiffs, the Court concluded that qualified immunity was not warranted because under the circumstances claimed by Plaintiff[2], a reasonable police officer could not "have believed that this was a case of hot pursuit excusing the requirement of a warrant." (Op. at 16.) The opinion specifically addressed the qualified immunity question of whether a reasonable official "could fairly have known" that his entry under the circumstances was illegal. The Court finds no clear error in either the legal standard used or its application.

---

[2] Again, upon this summary judgment motion, the Court was obliged to credit the designated facts in the version most favorable to the Plaintiff, namely, that the person who was the alleged object of the police search was in fact the Ramirez residence the entire afternoon and that he never left.

13. To the extent Defendants contend that the Court incorrectly denied summary judgment because there was a factual dispute, that argument must firmly be rejected. Defendants state that "[t]he application of the 'factual dispute' standard . . . is inappropriate" and a factual dispute is "not dispositive" of whether qualified immunity applies, because "[t]he standard for determining qualified immunity is the 'reasonable objective police officer standard.'" (Def. Br. at 2-3.) Defendants' argument is far from clear, but they appear to contend that the standard for summary judgment – whether a genuine dispute of material factual exists on the evidence viewed in the light most favorable to the plaintiff – is inapplicable to the qualified immunity inquiry. They also appear to suggest, indirectly, that Plaintiff is not entitled to favorable factual inferences, because the evidence must be viewed from the perspective of an "objective police officer," arguing that "despite the claimed factual differences, the overall circumstances viewed by an objective reasonable police officer demonstrate actions which fall under the protection of qualified immunity." (Def. Br. at 4.) Defendants' position is unsupported and plainly contradicted by the case law.

14. It is well-settled that courts are required at the summary judgment stage to view the facts and draw reasonable inferences in the light most favorable to the party opposing the

10

summary judgment motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); Saucier, 533 U.S. at 201. "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." Scott v. Harris, 550 U.S. 372, 378 (2007). When the defense of qualified immunity is raised at the summary judgment stage, the inquiry is the following: Taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a clearly established constitutional right? Saucier, 533 U.S. at 201. The Third Circuit has specifically stated that although the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009); see also Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). Thus, the court must deny summary judgment if on the plaintiff's version of the facts, defendants violated the plaintiff's clearly established constitutional rights. Giles, 571 F.3d at 327.

    15. The Court's opinion explicitly addressed whether qualified immunity was warranted when the facts were "viewed in the light most favorable to the Plaintiff." (Op. at 12.)

11

Applying that standard, the Court first held that on Plaintiff's version of the facts, see Scott, 550 U.S. at 378, a reasonable jury could find that the warrantless entry did not fall within the "hot pursuit" exception. (Op. at 13) ("[T]here is sufficient evidence in the testimony of Plaintiff, Babilonia, and Vargas from which a reasonable jury could find that Defendants' forcible entry was not based upon a hot pursuit.") The Court then examined the existing case law and determined that a reasonable official would have known at the time that such conduct violated the Fourth Amendment. (Op. at 13-14.)

16. Defendants also attempt to argue that the Court erred in not giving more credit to the official police reports describing the incident. (See Def. Br. at 2-3.) They contend, for example, that the Court was wrong to draw a negative inference from the inconsistencies in the narrative given in the police Incident Report and the police Arrest Report, because officers are not required to include every detail in every report, and multiple reports must be read together in order to form a fully informed opinion. (See Defs. Br. at 3.) As already discussed, supra, "[a] motion for reconsideration is improper when it is used solely to ask the court to rethink what it has already thought through rightly or wrongly." Christiansen v. Camden Cnty., Civ. No. 07-2749, 2007 WL 4440387, at *1 (D.N.J. Dec 18, 2007). A party seeking reconsideration "must show more

12

than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting Carteret Savings Bank, F.A. v. Shushan, 721 F. Supp. 705, 709 (D.N.J. 1989)). As Defendants' argument amounts to nothing more than an attempt to relitigate its summary judgment motion on the same facts, it is not a proper basis for reconsideration. Further, there is no support for the notion that even perfectly consistent police reports would cause the court, at the summary judgment stage, to disregard competent eyewitness testimony to the contrary.

17. For the reasons stated above, Defendants' motion for reconsideration will be denied. An accompanying order will be entered.

 July 17, 2015                             s/ Jerome B. Simandle  
Date                                       JEROME B. SIMANDLE  
                                           Chief U.S. District Judge